O 91 (Rev. 11/82)      **CRIMINAL COMPLAINT**      **ORIGINAL**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

FILED
CLERK, U.S. DISTRICT COURT
MAR 14 2019
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| UNITED STATES OF AMERICA<br>v.<br>EDWARD MARTIN ROSTOHAR | DOCKET NO. |
|---|---|
| | MAGISTRATE'S CASE NO.<br>19MJ01037 |

Complaint for violation of Title 18, United States Code, Sections 1344 and 1028A

| NAME OF MAGISTRATE JUDGE<br>Honorable Steve Kim | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>unknown through the present | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

**See Attachment**

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>Alice Tsujihara |
|---|---|
| | OFFICIAL TITLE<br>Special Agent, Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE<br>STEVE KIM | DATE<br>March 14, 2019 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Andrew Brown, 11th floor, x0102 AB     **Probable Cause Arrest; in Custody Now**     Detention Requested

**Attachment**

Count One (18 U.S.C. § 1344)

Beginning before 2000, and continuing through March 12, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant EDWARD MARTIN ROSTOHAR, acting with the intent to defraud, knowingly executed and attempted to execute a scheme to defraud CBS Employees Federal Credit Union, a federally insured financial institution, and to obtain monies and funds owned by and in the custody and control of CBS EFCU by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. To execute the fraudulent scheme, defendant used his position as the manager CBS EFCU to write checks and make online payments to himself or on his own behalf from CBS EFCU, forging the signature of another employee at the credit union on the checks, thereby embezzling over $40 million from CBS EFCU.

Count Two (18 U.S.C. § 1028A)

Beginning before 2000, and continuing through March 12, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant EDWARD MARTIN ROSTOHAR knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1344, Bank Fraud, as charged in Count One.

A F F I D A V I T

I, Alice Tsujihara, being duly sworn and under oath, hereby depose and say as follows:

**INTRODUCTION**

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") assigned to the Los Angeles Division. I am have been employed with the FBI as an SA since 1997. I am currently assigned to the White Collar Crimes Squad, where I specialize in the investigation of complex financial crimes, including bank fraud, mortgage fraud, wire fraud, identity theft, investment fraud and money laundering. In addition to conducting numerous fraud investigations during my career, I have received both formal and informal training from the FBI and other entities regarding violations of various fraud statutes.

**SEEKING COMPLAINT IN SUPPORT OF PROBABLE CAUSE ARREST**

2. This affidavit is made in support of a criminal complaint against EDWARD MARTIN ROSTOHAR ("ROSTOHAR") for bank fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1344 and 1028A.

3. The information set forth in this affidavit is based upon my participation in the investigation, encompassing my personal knowledge, observations and experience, as well as information obtained through my review of evidence, investigative reports, and information provided by others, including other law enforcement partners. I have not included every fact known to me concerning this investigation; I have set forth only the facts that I believe are necessary to establish probable cause for the complaint.

## INVESTIGATION BACKGROUND

EMBEZZLEMENT

4.  On March 11, 2019 Lysa Simon, an attorney that represented CBS Employee Federal Credit Union (CBSEFCU), which I know from my training and experience is a federally insured financial institution, contacted the FBI National Threat Operations Center to report an embezzlement by EDWARD ROSTOHAR of CBSEFCU. ROSTOHAR was going to be suspended by the Board of Directors the following day.

5.  On March 13, 2019, Detective Oscar Garza of the Los Angeles Police Department (LAPD) advised that LAPD also received information from Simon and had arrested ROSTOHAR and executed a follow up search warrant on his residence at 4318 Beck Ave., Studio City, CA on March 12, 2019. Garza's search warrant, including a related police report, are attached and incorporated by reference. Detective Garza told me that when ROSTOHAR was arrested, he was driving his car which contained over $200,000 in cash. FBI SA Bailey, who was present at the arrest, told me that ROSTOHAR's current passport was on him at that time. ROSTOHAR was released on bond on March 13, 2019. Based on Garza's investigation of the case and his encounter with ROSTOHAR, Garza believed that ROSTOHAR was a flight risk.

6.  On March 13, 2019, I and other FBI agents went to ROSTOHAR's residence and asked to speak to him. We read him his Miranda rights, which he waived. He told us the following:

   a. ROSTOHAR was employed as a manager of CBSEFCU for approximately 30 years and had been embezzling funds from the credit union for approximately 20 years. He kept going as it snowballed as he tried to cover his activity.

2

      b.    Prior to his employment at CBSEFCU, ROSTOHAR was an auditor at NCUA for several years.  Because of that, ROSTOHAR knew what NCUA auditors looked for in their exams and audits of the credit unions.  ROSTOHAR explained that the auditors themselves never operated a financial institution, and thus didn't really know what to look for.  ROSTOHAR knew how to respond to the auditors so that his theft would not be discovered.

      c.    ROSTOHAR explained that one of the items the auditors looked for were quarter end records, which was historical.  In order to hide his theft, ROSTOHAR adjusted the balance in General Ledger Account 9999999, which was a clearing account.  Expenses and income went through this account.  ROSTOHAR deposited fake income into this account, drawing the funds from the credit unions' clients' Certificate of Deposits.  The funds were not taken from individual CD's belonging to the clients but from the overall CD balance held by the credit union.  Then the real expenses would be processed through the account.

      d.    Another item NCUA auditors looked for were negative earnings.  ROSTOHAR would alter the credit union's records so that the credit union would appear to operate with positive earnings, even if it was as little as $1,000.

      e.    After we asked ROSTOHAR what happened to the stolen money, he claimed he lost most of it gambling.  He also described spending money freely, such as travelling by private jet, giving his wife an allowance of $5,000 a week, and buying expensive watches.  He also bought his Porsche and Telsa with funds stolen from the credit union.

   f. ROSTOHAR said he started a business in Reno with his business partner Ellen Burcham and purchased a real estate lot in Reno, Nevada with stolen funds from the credit union. The down payment to purchase 131 Mark Twain Ave., Reno NV 89509 also came from stolen funds from the CBSEFCU. The business in Reno involved a café.

   g. ROSTOHAR deposited CBSEFCU checks into his personal bank accounts at Citibank and Chase.

   h. Other properties ROSTOHAR owned were his residence at 4318 Beck Ave., Studio City, CA, one quarter share of a place in Cabo (Mexico), and one half share of a house in Reno.

   i. ROSTOHAR was asked what his recent large checks that were in the tens of thousands of dollars from CBSEFCU were used for. He answered that his Reno business just started and he needed more money as it was only opened in December. He added that his mortgage payment for his house was $5,000 a month.

  7. On 03/13/2019, I talked to LINDA TLEMSANI (TLEMSANI), wife of ROSTOHAR. TLEMSANI stated that she had called 911 and informed the police about ROSTOHAR's actions because she was afraid that he would harm himself and that it was the right thing to do after he said he stole from the credit union.

  8. On March 14, 2019, TLEMSANI called me at my work. When I asked her what she meant by "doing the right thing by calling 911," she responded that if someone steals and did something bad, she believed in the justice system. She also believed at that time, ROSTOHAR was in a state of panic and she didn't know what he would do. She was afraid for his safety, that he might kill himself, or do something stupid. She also didn't know where he was going, so she

4

called the police. ROSTOHAR did not ask TLEMSANI to go with him; he was leaving by himself. When asked where she thought he would go, TLEMSANI replied "I had no idea where he going." TLEMSANI stated that she believes he is no longer a danger to himself and hopes he will be released. She said she would not flee. TLEMSANI stated that ROSTOHAR knows he is going to jail but TLEMSANI is hoping it is not for the rest of his life.

9.  TLEMSANI received $5,000 a week from ROSTOHAR and spent most of it on food, clothes, and expenses related to her work as an aspiring recording artist. TLEMSANI advised that making a music video and taking various classes was very expensive but that she hoped to become a recording artist in the near future. TLEMSANI did not make mortgage payments from her allowance.

10. TLEMSANI did not appear to know the magnitude of the theft and was hopeful that her residence at Beck Ave. would cover the loss amount. When she was told that it was many times that amount, she said she hoped he could give the money back. She explained, "He is not a spender. I am more of a spender than he is" and that "the money has to be somewhere." TLEMSANI did not know of any real estate he owns besides the Beck Avenue home.

11. When asked about the Cabo property and if she had been there, TLEMSANI replied that she had been there a number of times and it was a condominium in Cabo. She didn't know the address but ROSTOHAR's brother, "Bobbie" would know the address. The property was purchased many years ago.

**THE FRAUD SCHEME**

NCUA

12. On March 14, 2019, NCUA provided their preliminary findings of the ROSTOHAR's embezzlement:

    a. ROSTOHAR, the credit union's long-term manager, removed funds by altering the payees on credit union checks.

    b. His process was to pretend to withdraw funds from member accounts by using the credit union's data processing system to issue a check with a blank payee. He then manually typed the name and address of a member on the credit union receipt to ensure the credit union's physical records would show a member's name and address as the payee information; the check was shown with a blank payee on the data processing system. Funds to issue the check were withdrawn from share account, number 9999999-S1. This share account belongs to the credit union and is used as a clearing account.

    c. Once the credit union check was issued on the data processing system, he would manually type a payee of his choosing, most often reflecting his name or an associated party name. Then, he would deposit the altered check in an account that he controlled

    d. Account 9999999-S1 was funded as follows. ROSTOHAR identified and exploited a weakness in the ShareOne data processing system. He posted entries to general ledger account #901000, Regular Shares. This account is intended to reflect the aggregate of all deposits held in the individual member share accounts listed on the member share and loan trial balance. By making a general ledger entry moving a "deposit" from Regular Shares (account #901000) to the credit union's share account (9999999-S1), he would then be able to withdraw money out of the credit union's share account by issuing a credit union check through Catalyst Corporate Credit Union had

received several complaints from customers of unauthorized transactions and withdrawals from their accounts.

  e. Based on financial records of CBSEFCU up to February 28, 2019, NCUA reported a rough preliminary loss estimate of $40,541,130.

## CONCLUSION

13. Based upon the foregoing facts and my training and experience, I believe there is probable cause to believe that ROSTOFAR committed bank fraud and aggravated identity theft in violation of Title 18, United States Code, Sections 1344 and 1028A.

               /s/ Alice Tsujihara
               Alice Tsujihara, Special Agent
               Federal Bureau of Investigation

Subscribed to and sworn before me this 14 day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

SW NO._____

# STATE of CALIFORNIA, COUNTY of LOS ANGELES,
# SEARCH WARRANT and AFFIDAVIT
# (AFFIDAVIT)

Peace Officer O. Garza swears under oath that the facts expressed by him/her in this **Search Warrant and Affidavit** and in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below, and are now located at the locations set forth below. Wherefore, Affiant requests that this Search Warrant be issued.

NIGHT SEARCH REQUESTED: ☒ YES ☐ NO  ELECTRONIC MONITORING REQUESTED: ☐ YES ☒ NO
HOBBS SEALING REQUESTED: ☐ YES ☒ NO  SEALING REQUESTED (EVIDENCE CODE 1040-1042): ☐ YES ☒ NO
RETURN EXTENSION REQUESTED: ☐ YES ☒ NO  DELAY OF NOTIFICATION REQUESTED (PENAL CODE 1546.2b): ☐ YES ☒ NO

_____O. Garza 3-12-19_____
(Signature of Affiant)

# (SEARCH WARRANT)

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF LOS ANGELES:**
proof by affidavit, having been this day made before me by **Peace Officer O. Garza** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by "☒"(s), in that:

- ☒ property was stolen or embezzled;
- ☒ property or things were used as the means of committing a felony;
- ☐ property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their being discovered;
- ☒ property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony;
- ☐ property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring;
- ☐ there is a warrant to arrest a person;
- ☐ a provider of electronic communication service or remote computing service has records or evidence, as specified in Section 1524.3, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery;
- ☐ property or things to be seized include an item or any evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code;

**You are Therefore COMMANDED to SEARCH:** (premises, vehicles, persons)
See pages 1 - 5

**For the FOLLOWING PROPERTY, THING(s) or PERSON(s):**
See pages 1 -5

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this court, at the courthouse of this court. This **Search Warrant** and **Affidavit** and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this _____ day of, _____ _____, at _____ A.M. / P.M. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

NIGHT SEARCH APPROVED: ☒ YES ☐ NO  ELECTRONIC MONITORING APPROVED: ☐ YES ☒ NO
HOBBS SEALING APPROVED: ☐ YES ☒ NO  SEALING APPROVED (EVIDENCE CODE 1040-1042): ☐ YES ☒ NO
RETURN EXTENSION APPROVED: ☐ YES ☒ NO  DELAY OF NOTIFICATION APPROVED (PENAL CODE 1546.2b): ☐ YES ☒ NO

_____  _____
(Signature of Magistrate)  (Magistrate's Printed Name)

Judge of the Superior Court of California, County of Los Angeles, CCB Dept. _____

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**Location No. 1:**

4318 Beck Avenue

Studio City, CA. 91604



Two story family residence, tan stucco with red tile roof on the east side of Beck Avenue. The numbers 4318 are posted on the front of the house above the brown 2 car garage door. The front double brown door faces west.

Vehicles

Including but not limited to:

1). 2018, silver Porche, License plate 8CRB075, DMV shows the vehicle registered to Edward Rostohar, 4318 Beck Avenue, Studio City CA 91604.

2). 2015, Tesla, License plate 8HLV251, DMV shows the vehicle registered to Edward Rostohar, P.O. Box 480051, Los Angeles CA 90048.

The search of the location, vehicles, shall include safes, all rooms, locked or unlocked, and other parts therein. The storage rooms, containers, safes, trash containers. The search shall extend into all containers, desk, cabinets, drawers, closets, briefcases, trash receptacles, recording media, mail boxes, garages, or other storage areas within the residence, as well as any off-site storage facilities, leased, assigned, rented, owned or under the control of any and all suspects. The search shall include any computers, computer-based storage media, whether locked or unlocked, contained within the area described in this paragraph. The search shall further extend to cellular telephones, security monitoring devices and tapes (on computer or other storage units, video tape or disc), the answering of telephones on the premises and the receipt and examination of any incoming fax documents. The officers are authorized, if necessary, to remove the electronic storage devices from the premises and conduct an offsite evidentiary search of the electronic storage devices.

**FOR THE FOLLOWING PROPERTY:**

Any documents including but not limited to:

1). Any items tending to establish the identity of persons who have dominion and control of the location, premises, automobiles, or items to be seized, including delivered mail, whether inside the location or mail boxes, bills, utility bills, telephone bills, miscellaneous addressed mail, personal letters, personal identification, purchase receipts, rent receipts, sales receipts, tax statements, payroll check stubs, keys and receipts for safe deposit box(s), keys and receipts for rental storage space, keys and receipts for post office box or mail drop rentals, ignition keys, car door and trunk keys, vehicle ownership certificates or "pink slips," and/or vehicle registration slips.

2). Any business record files and bank records.

3). Any desktop computer and/or laptop computer located on the premises.

4). Any recordation of voice transmissions on telephone answering machines, audio tapes and telephone message receipt books, and written phone messages, and photographs tending to show occupation of the residence / business and connection between co-conspirators, whether identified, or unidentified, also digital pagers which will document telephone numbers of co-conspirators, and if found, to activate the digital pagers' display mechanism and to obtain messages from the pagers, answering machines, tape recorders, and any other recording devices, and to play such devices to obtain their messages.

5). Any examples of handwriting including letters, address books, business records, canceled checks, notes, and/or lists.

6). Any computer hardware, software, and data, including central processing units (CPUs) hard disk drives, floppy disk drives, zip disk drives, tape drives, removable media drives, optical/CD-ROM drives, servers, workstations, peripheral storage devices, floppy disks, zip disks, magnetic tapes, cassette tapes, removable storage media, and/or optical CD-ROM disks or cartridges, or any other device or media capable of digitally or magnetically storing data.

7). Computer or cell phone user accounts to establish owner/possessor of the device.

8). Any financial documents or spreadsheets in the name of CBS Employees Federal Credit Union.

9). United States Passport in the name of Suspect Edward Rostohar.

10). Any large quantity on United States currency located inside the residence or in any of the described vehicles registered to Edward Rostohar

Based upon my training and experience I know that computers store data in a variety of formats and on occasion data stored on computers can be hidden, encrypted and /or protected by password. I also know it is not always practical to search a computer for digital evidence at the location of the search for several reasons enumerated as follows:

a). Searching a computer is a highly technical process, which requires specific expertise and specialized equipment.

b). Computers today use a variety of operating systems, which require different methods of accessing data and gathering evidence.

c). The searching of computers requires the use of methods and procedures in a controlled environment, which will ensure the integrity of the evidence.

d). Computer hardware and storage devices may contain "booby traps" that destroy and or alter data.

Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conduct a complete and accurate analysis of the equipment and storage devices. I request that your affiant be allowed to remove said electronic storage devices to an off-site location for the recovery and analysis of evidence, and that the LAPD Computer Crime Unit maintains the digital image.

/
/
/
/
/
/

1     I, Oscar Garza, Serial No. 32172, am a Detective for the Los Angeles Police Department
2     (LAPD) assigned to Commercial Crimes Division/White Collar Unit. The unit is responsible
3     for investigating financial abuse of elders ranging from identity theft, misuse of funds, and the
4     transfer and or sale of real or personal property. I have been a police officer for the City of
5     Los Angeles for over 23 years. I have investigated and arrested individuals for the crimes of
6     Elder Abuse, Grand Theft, Embezzlement and Forgery. I have interviewed the persons
7     arrested for these crimes and gained knowledge on their methods of operation, how they
8     prepared for, perpetrate, and attempt to avoid identification and arrest for their criminal related
9     activities.
10
11     I have also received formal and informal training from more experienced fraud detectives and
12     bank fraud investigators in identity theft, stolen/forged checks, theft of access card
13     information, counterfeit check investigations, business embezzlement schemes, and the various
14     methods utilized by suspects to commit the crimes of Elder Abuse, Grand Theft,
15     Embezzlement and Forgery. I received training and attended the Los Angeles County District
16     Attorney's seminar on investigation and prosecution of suspect(s) for Elder Abuse,
17     Embezzlement and Forgery.
18
19     On March 12, 2019, I, Detective Garza, Serial No. 32172, assumed investigative
20     responsibilities for an Embezzlement investigation, bearing DR 1915-07708. Person
21     Reporting Lysa Simon *(Lawyer)* indicated Suspect Edward Rostohar stole millions of dollars
22     from CBS Employees Federal Credit Union.
23
24     My partner Detective Esquivel-Solis, Serial No 27201, and I, responded to CBS Employees'

Federal Credit Union, 12001 Ventura Place, Suite No. 204, Studio City. Upon arrival we met the president of the credit union, Douglas Edwards. Edwards indicated that on March 6, 2019, Chery Sicka - Assistant Manager, was looking for a copy of a check, in which a stop payment was placed on. While looking for the check, Sicka stumbled across a check in the amount $35,000.00 made payable to Suspect Edward Rostohar, Manager. The check did not indicate why Rostohar had received such a high dollar amount check. Sicka became concern and conducted an audit of CBS Employees Federal Credit Union checks issued since the January 2018 to the present and uncover numerous checks made payable to Rostohar. The total amount of the checks is approximately $3,775,000.00. Sicka noticed that all the checks payable to Rostohar contained what appeared to be Anna Nalbandyand's signature. Nalbandyand is the CBS Employees Federal Credit Union's member services representative. Sicka showed several of the checks to Nalbandyand and she stated that she had not signed the checks and did not know why the checks were issued to Rostohar.

On March 12, 2019, Edwards along with other CBS Employees Federal Credit Union staff members had a meeting with Rostohar and presented him with a Memorandum. The Memorandum indicated the following, "Matters of potential inappropriate conduct and irregularities in the performance of your job duties have been brought to the attention of the Board of Directors. An investigation has been commenced into these matters. Effective immediately you are suspended from all your duties as Manager of the CBS Federal Credit Union." Edwards indicated that Rostohar gathered all his belonging and was escorted out of the office without saying a word.

On March 12, 2019, Los Angeles Police Officers Officers Burke, Serial No. 40352 and Martin,

1 Serial No. 43577, assigned to North Hollywood Station, working unit 15A85, in full uniform,
2 received a 911 radio call *(Incident No. 190312001607).* The caller told the 911 dispatcher that
3 her husband had stolen money from work and was leaving the country, the phone line then
4 disconnected. The address of the call was 4318 Beck Avenue, Studio City, CA 91604. Upon
5 the officers' arrival, they detained Suspect Rostohar without incident. Further investigation
6 revealed that Rostohar was named as a suspect on an LAPD Investigative Report, bearing DR
7 1915-07708. Rostohar was taken to North Hollywood Station pending further investigation
8 (See attach statement form).
9
10 Detective Esquivel and I, responded to North Hollywood Station and interviewed Suspect
11 Rostohar. I read Rostohar his Miranda Rights per Los Angeles Police Department form 03.11.
12 Rostohar waived his rights and stated that he has been stealing money from the CBS
13 Employees' Federal Credit Union for approximately 20 years. Rostohar said he first began by
14 paying the monthly balances on his personal credit cards with funds from the credit union's
15 online accounts or forging checks. After several years, Rostohar said he was just forging Anna
16 Nalbandyand signature on the credit unions checks and then depositing the checks in his
17 personal accounts. Rostohar estimates that during the last 20 years, he has probably taken
18 more than 40 million dollars.
19
20 Detectives Lee, Serial No. 32673 and Lewis, Serial 38100, spoke to Linda Tlemsani, wife of
21 Suspect Rostohar. According to Linda, she and Rostohar have been legally married since
22 2005. On March 12, 2019, at approximately 0900 hours, the Rostohar came into their bedroom
23 in a panic. Rostohar stated, "I knew this day was coming, I got to go. I have to leave the
24 country. I'm a con. Everything is true. I don't have time. I have to pack, I don't want to go to

1  jail, I'd rather die than go to jail." Rostohar packed his clothes into a black carry-on luggage
2  and another black bag then placed them into his grey Porsche.
3
4  According to Linda, Rostohar added that he stole money from the credit union but failed to
5  provide any more details. She added that the Rostohar has been the credit union manager for
6  approximately 30 years and is the most honest person she knows.
7
8  A criminal history of Suspect Edward Rostohar utilizing Department resources revealed no
9  past criminal history. A Department of Motor Vehicle check revealed Rostohar was issued
10 license No. ▓▓▓▓▓▓ The address on file as of 10/2/2008 is 4318 Beck Avenue, Studio City
11 CA. 91604.
12
13 It is my opinion, based on my training, experience and the facts enumerated in this affidavit
14 that a crime of Embezzlement, California Penal Code Section 503 has occurred. It is further
15 my belief that a search of Rostohar's residence and a forensic analysis of the computers seized
16 from his residence, as well as other electronic media storage device, could yield additional
17 evidence in the criminal prosecution of the suspect for the above-mentioned crime.
18
19 Based upon my training and experience, I request this Search Warrant be endorsed for night
20 time service based upon the facts that Rostohar has called his wife and informed her that he is
21 in the process of bailing out of jail. It is imperative that Detectives conduct a search of his
22 residence and collect any evidence as soon as possible to prevent the destruction of evidence.
23 I therefore, request an endorsement permitting search during the night time hours.
24 /

# LOS ANGELES POLICE DEPARTMENT
## INVESTIGATIVE ACTION / STATEMENT FORM

| Field | Value |
|---|---|
| Tape No. | |
| Witness No. | |
| Inc No | 190311CO 1607 |
| DR or Bkg No | 191507708 |
| Name | ROSTOHAR, EDWARD |
| Date/Time of Interview | 3/12/19 |
| Location of Interview | |
| Residence Address | 4318 BECK AVE |
| City | STUDIO CITY |
| Zip Code | 91604 |
| Business Address | 12001 VENTURA PL SUITE 204 |
| City | STUDIO CITY |
| Zip Code | 91604 |
| Sex | M |
| Descent | W |
| Hair | BRO |
| Eyes | GRN |
| Height | 6-6 |
| Weight | 240 |
| DOB | [redacted] |
| Age | 56/62 |

**MIRANDA ADMONITION**
1. You have the right to remain silent.
   Do you understand?
2. Anything you say may be used against you in court.
   Do you understand?
3. You have the right to the presence of an attorney before and during any questioning.
   Do you understand?
4. If you cannot afford an attorney, one will be appointed for you, free of charge, before any questioning if you want.
   Do you understand?

If a waiver is desired:
Do you want to talk about what happened?

**Statement:** Include who, what, when, where, why, and how.

On March 12, 2019 at approximately 0920 hours my partner, (Officer Burke # 40352) and I, (Officer Martin #43577) were assigned to North Hollywood unit 15A85-W2. We were in full uniform, driving a marked black and white police vehicle. We received a radio call of PR stated that husband stole money from work at 4318 Beck Ave, Inc :190312001607

Radio call comments: PR STATED ON LINE, HUSBAND STOLE MONEY FROM WORK, LEAVING COUNTRY, PR DISCONNECTED LINE, REFUSED TO ANSWER QUESTIONS, LINE DISCONNECTED

Upon on our arrival, my partner and I met with PR (later identified as the wife of Suspect ) who advised officers her husband was upstairs packing his belongings and was planning to fly out of state. She stated that her husband (later identified as Rostohar, Edward) took money from his employer (CBS Federal Credit Union). She then went back inside the location 4318 Beck Ave.

My partner then requested one additional unit and a supervisor. Officer Delbar #38887 and Officer Gomez # 42400 15A67 arrived at scene at approximately 0935 hours. Sgt. Smith # 35811 15L70 arrived at scene at approximately 0945 hours.

Officer Gomez and I door knocked Rostohar's neighbors to gather information regarding Rostohar but were met with negative results.

03.11.20 (12/05)

Officers formed a tactical plan to door knock the residence in one more time in attempt to gather more information.

As Officers were approaching the residence, the front garage door opened and a silver Porsche was reversing out of the drive way. Officers then approached vehicle and advised the driver (Rostohar) to turn off the vehicle and exit the vehicle pending a Theft Investigation.

Rostohar was identifed through in California Drivers License ( 

Officer Delbar, Officer Gomez, and Sgt. Smith entered the location to gather information regarding the incident from Rostohar's wife.

My partner and I detained Rostohar pending a theft investigation. Rostohar advised Officers he was going to the store. He was recently fired from his job at CBS Credit Union. We advised Rostohar he was detained due to a theft investigation regarding a unanimous caller stating he stole money from his employer. My partner asked Rostohar if he had money on him. Rostohar advised Officers he has money in his luggage that were located inside his vehicle. (unknown amount) The money inside the luggage was his and not his employers. Rostohar gave consent to open/search his vehicle's trunk and observed three bags of luggage. Officer Burke observed a large amount of cash inside one of the bags in the trunk of the vehicle.

I asked Rostohar if he was going to fly somewhere today. He stated that he was going to fly out to Austin, TX to see his son. Rostohar advised officers he received a termination letter from his employer regarding an investigation and wanted to tell his son in person regarding the termination.

Detective Lee #32623 from the NHWD Theft Table arrived at scene. He advised to transport Rostohar to the NHWD Station pending a theft investigation.

15Z7 Officer Pedroza 39723 and Officer Arevalo #38078 responded to 12001 Ventura Ave (CBS Bank) and spoke with the employees at the location. The employees stated there is a open investigation going on with Rostohar. A report was filed at Devonshire Division a few days prior. Det Jarvis #27605 from the Valley Commercial Crimes division was contacted regarding the investigation. My Partner advised Det Jarvis of the incident.

Det Garza #32172 arrived at the NHWD Station and interviewed Rostohar.

My partner and I booked Rostohar with the advisement from Det Garza at Valley Jail.